## JOHN T. SHIRLEY v. J. L. KEAGY ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF BLAIR COUNTY.

Argued April 22, 1889—Decided May 6, 1889.

*(a)* In an action on a note given to two partners in payment for a stock of goods, the defendant claimed to set off damages sustained by him in a loss of business through an alleged breach by one of said partners of their joint and several contract, made at the time of the purchase, not to enter again into the same business.

1. In such case, the defendant having had full knowledge of the quality and value of the goods, when he purchased, testimony on his behalf that the goods were old and not worth the amount of the note, was inadmissible to show damages sustained by him through plaintiff's breach of contract.

2. The defendant was not entitled to set off against the note the depreciation in value as a business stand of real estate in which his store was kept, and which in an independent transaction he had purchased from one of the partners plaintiffs.

3. The plaintiffs having adduced evidence that the defendant's loss of business was attributable to his habits of intoxication and inattention to business, testimony on behalf of defendant that, before the purchase, one

Statement of Facts.

of the plaintiffs was intemperate and yet they did a good business, was inadmissible.

4. In such case, it was not error to charge the jury that the defendant was entitled to be compensated fully and fairly for the damages sustained through the breach of plaintiff's contract if proved, but that the jury were restricted by the evidence and allowed no latitude in assessing damages outside of it or beyond it.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

No. 439 January Term 1888, Sup. Ct.; court below, No. 18 June Term 1886, C. P.

On March 20, 1886, J. L. Keagy and F. W. Keagy, lately trading as J. L. Keagy & Co., brought assumpsit against John T. Shirley upon a promissory note of which the following was a copy:

"$10,500.          MARTINSBURG, PA., March 17, 1883.

" One year after date I promise to pay Jacob L. Keagy & Co., Ten thousand five hundred dollars without defalcation for value received, March 10, 1883.          JOHN T. SHIRLEY."

On the back of the note receipts for payments were indorsed as follows, to wit: $1,000, paid March 17, 1883; $2,751, paid December 13, 1883. The defendant pleaded payment with leave, etc., defalcation and set-off. Issue.

At the trial on October 13, 1887, as a defence to the note the defendant testified that on June 2, 1882, he purchased from Jacob L. Keagy, one of the plaintiffs, certain real estate in Martinsburg, including a house which had been occupied partly as a residence by Jacob L. Keagy, and partly by J. L. Keagy & Co., who for a long time had kept therein a general mercantile store; that in September or October 1882, he agreed to buy from the plaintiffs their stock of goods, and a written agreement was drawn up and signed by all the parties, the defendant to take possession the following spring; that he had endeavored to obtain a copy of this agreement from the plaintiffs, who had the original, but was unable to do so. It was admitted, however, that the agreement contained a provision that in the spring of 1883, an inventory was to be taken of the goods in the store, and the defendant was to pay therefor at the price they had cost the plaintiffs. It was also admitted

that an inventory was so taken in the presence of plaintiffs and defendant, that it amounted to $10,500, and that the note in suit was given in payment therefor.

The defendant also testified and produced a number of witnesses, who had seen the agreement, to prove that it contained a stipulation that neither Keagy & Co., nor either of the plaintiffs, should engage in business in Martinsburg ; that on April 1, 1884, F. W. Keagy had opened a store in said place to sell some of the articles dealt in by the defendant, in consequence of which the defendant's sales had fallen off; that he had been injured thereby and claimed to set off his damages amounting, as he claimed, to $3,393.17, for breach of this agreement. He further claimed and introduced testimony to prove that the cost price marked on some of the goods had been altered by the plaintiffs before the inventory was taken, and that he had been thereby defrauded out of at least $600.

He further offered to prove by a witness, John H. Law, that the goods purchased at the price of $10,500 were old goods, not worth, in fact, half that amount of money: this for the purpose of showing one of the elements of the damages that had been sustained by the defendant by reason of breach of contract of the plaintiffs.

Objected to, because there was a special contract between the parties for the purchase of this store, with a full knowledge on the part of the purchaser of the kind and quality of the goods.

By the court : I think the objection well taken at this stage ; exception.[1]

He then made the same offer, for the purpose of supporting his claim that the agreement contained a clause forbidding the Keagys or either of them from going into business in Martinsburg, alleging that he would not have taken such a stock of goods unless there was some such consideration. For this purpose the evidence was admitted.

The defendant also offered to prove by witnesses called, that the breach of contract on the part of the plaintiffs had had the effect of deteriorating and depreciating the real estate of the defendant to the extent of at least $3,000.

Objected to, first, because it was an offer to give evidence of injuries too remote ; second, the offer was irrelevant to the matters pertaining to the contract.

By the court: Objection sustained; exception.[2]

The plaintiffs denied that the agreement contained any provision forbidding Keagy & Co., or either of them, to engage in business in Martinsburg, and supported their denial by the evidence of themselves and of the justice of the peace who had drawn the agreement. They further testified that any alterations of the prices on the goods to be inventoried, were made in good faith, because those goods were bought very low and Shirley ought to pay more for them; that, besides, at the taking of the inventory, when the question arose, the most if not all of the goods were marked back, and all were inventoried at prices which the clerks thought fair and were agreed upon. Claiming further that any falling off in the defendant's business was due to his own default, the plaintiffs called a number of witnesses to prove the defendant's frequent intoxication and his neglect of business.

In his sur-rebuttal the defendant made the following offer:

The defendant's counsel propose to ask the witness on the stand whether Jacob L. Keagy, who was a member of the firm of J. L. Keagy & Co., was not a man of intemperate habits, and whether, notwithstanding the fact, their annual sales did not amount to $35,000: this for the purpose of answering the allegation of the plaintiff that the falling off in sales was owing to the intemperate habits of J. T. Shirley.

Objected to by the plaintiff because it is irrelevant and immaterial to the issue.

By the court: The defendant alleges that his sales fell off because one of the plaintiffs, after the defendant took possession, engaged in the same business; and the plaintiffs, in reply, allege that any falling off in sales was due to the intoxication of the defendant and inattention to business; the defendant now proposes to prove that one of the plaintiffs, before the purchase by the defendant, was also intemperate. This is immaterial and no answer to the plaintiffs' averment. The offer is overruled; exception.[4]

The court, DEAN, P. J., charged the jury, orally: and, having left to them to find what were the terms of the contract between the plaintiffs and the defendant; whether the plaintiffs had stipulated that they, or either of them, would not

again engage in the same business, as claimed by the defendant, or whether there was no such stipulation in the contract, answered one of the defendant's points as follows:

The defendant asks us to say to you,

3. That if plaintiffs have violated their agreement, as claimed by the defendant, then the defendant is entitled to a full and fair compensation for the injury and damage resulting from their breach of the contract, and the jury are not tied down to any nice calculation, but are left considerable latitude in assessing the damages.

Answer: This point is denied. If the plaintiffs violated their agreement, as we have already instructed you, the defendant is entitled to be compensated fully and fairly in damages to the amount which the weight of the evidence shows he had actually sustained by reason of such violation of contract. But the jury, in all cases, are tied down by the evidence, and they are allowed no latitude in assessing damages outside of or beyond the evidence.[3]

The jury returned a verdict in favor of the plaintiffs as follows: "Amount of note with interest to date, $8,205.67; less damages in favor of the defendant, $1,000, $7,205.67." A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendant took this writ, assigning as errors:

1, 2, 4. The refusal of defendant's offers.[1][2][4]

3. The answer to the defendant's point.[3]

*Mr. H. M. Baldridge* and *Mr. G. H. Spang* (with them *Mr. R. B. Petriken*), for the plaintiff in error.

*Mr. Aug. S. Landis* (with him *Mr. S. B. Lysinger*), for the defendants in error.

PER CURIAM:

The court below instructed the jury that if the plaintiffs had entered into a contract with the defendant, at the time they sold him their stock of goods, that they would not engage in the general mercantile business in Martinsburg, as long as the defendant carried on business there, and had afterwards

violated their covenant by setting up the same line of business in that town, they would be responsible to him in damages for any injury he sustained by reason thereof. Upon this question of fact the jury evidently found for the plaintiffs.

The offer to prove that the goods, which were bought for the price of $10,500, were not worth half that sum, was properly rejected. The said goods were bought at a price agreed upon, after having been carefully examined and scheduled. The stock of goods was purchased by special contract, with full knowledge on the part of the purchaser of the extent and quality thereof. Under such circumstances, in the absence of fraud, no question of their value could legitimately arise.

Nor had the matter of the value of the real estate any relevancy to the issue below. That grew out of a separate contract.

The defendant's third point referred to the measure of damages for the alleged breach of the agreement. The court was asked to say to the jury that "they are not tied down to any nice calculation, but are left considerable latitude in assessing the damages." It would have been bald error to have affirmed this point. The learned judge very properly told the jury that "the defendant is entitled to be compensated fully and fairly in damages to the amount which the weight of the evidence shows he had actually sustained by reason of such violation of contract; but the jury in all cases are tied down by the evidence, and they are allowed no latitude in assessing damages outside of, or beyond the evidence."

It was not error to reject the evidence offered to show the intemperate habits of Jacob L. Keagy. It is enough to say that it was not relevant.

Judgment affirmed.